UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL VERDIER,

                    Plaintiff,

    -against-

THALLE CONSTRUCTION COMPANY, INC.,

                    Defendant.

---

No. 14-cv-4436 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Daniel Verdier ("Verdier") brings this action against his former employer, Defendant Thalle Construction Company, Inc. ("Thalle"), pursuant to 29 U.S.C. § 1132, to recover benefits allegedly owed to him under a Deferred Compensation Plan. For the following reasons, Verdier's motion for summary judgment and to amend his complaint is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the record before the Court, including the parties' respective submissions, affidavits, and exhibits. Unless otherwise noted, these facts are undisputed.

Verdier was employed by Thalle for a total of seventeen years – from April 1970 through November 1978, and again from November 1981 through February 1990. (Affidavit of Daniel Verdier in Support of Plaintiff's Motion to Amend Complaint and for Summary Judgment ¶ 2, ECF No. 36 [hereinafter "Pl. Affidavit"]; *see* Pl. Affidavit, Ex. 12, Letter from Greg Pacchiana, President of Thalle Construction Co., Inc. dated August 24, 2015 [hereinafter "Def.'s Aug. 2015 Letter"].) In or around 1982, the parties entered into a binding Deferred Compensation Plan

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/5/2017

("the Agreement"), which was revised in 1984.[1]  (*See* Pl. Affidavit, Ex. 1, 3; Defendant's Local 56.1 Statement ¶ 1, ECF No. 32 [hereinafter "Def. 56.1"].)  This plan would compensate Plaintiff for the years that he had previously worked at Thalle (1970 through 1978), but not for the three years that he had been employed elsewhere.  (Pl. Affidavit ¶ 3; *see* Def.'s Aug. 2015 Letter.)

Under the Agreement, Plaintiff would begin to receive his benefits in 2013, when he reached sixty-five years of age.[2]  (Pl. Affidavit, Ex. 3 ¶ 1.)  Plaintiff was to receive equal monthly payments based on "the average of the final five (5) years of compensation" which would be calculated using an "integrated formula."[3]  (*Id.*)  Plaintiff's average compensation for 1985 through 1990, the final five years that he was employed at Thalle, was $48,315.  (Pl. Affidavit ¶ 8; Def.'s Aug. 2015 Letter.)  The Agreement references, but does not define the formula to be used in determining the benefit amount owed to Plaintiff.  (Pl. Affidavit ¶ 9; Def. 56.1 ¶ 3.)

In the years preceding this suit, Plaintiff attempted to contact Defendant to discuss and arrange to receive payments owed to him under the Agreement, but Defendant failed to respond.  (*See* Pl. Affidavit ¶¶ 11, 12; *id.* at Exs. 7, 8.)  In May 2015, Plaintiff initiated this action, and in late August of that year, Defendant began to make payments to Plaintiff.  (*Id.* at Ex. 9; Def.'s

---

[1] The original Agreement, which is unsigned, appears to have been superseded by a revised version, dated March 9, 1984.  The differences between the two Agreements are nominal, and are not germane to this motion, as the portions in dispute are essentially identical.  Nor are either party's arguments premised upon differences between these two versions.  As delineated in the letter explaining changes in the revised Agreement, (*see* Pl. Affidavit Ex. 2), in the subsequent Agreement, the amount to be paid to Plaintiff after "normal retirement," as designated in Paragraph 1, increased from $180,000 to $202,800, and participants were given the additional option to receive their monthly payments in either 120 *or* 180 consecutive monthly installments.  (*Compare* Pl. Affidavit Ex. 1 *with* Ex. 3.)  For the purposes of this motion, the Court will refer to the revised Agreement.

[2] Verdier turned sixty-five on July 31, 2013.  (Pl. Affidavit ¶ 7.)

[3] In the spirit of completeness, the Court notes that this was previously referred to only as a "formula" in the preceding Agreement, but that the parties do not address this distinction.  (*Compare* Pl. Affidavit Ex. 1 *with* Ex. 3.)  The term "integrated formula" likely relates to a reduction in benefit amount to account for Social Security Benefits.  (*See* Pl. Affidavit ¶ 10) ("The 60% figure was taking into account that [Plaintiff] would be receiving social security payments that would supplement the Thalle payment".); *see generally* 26 U.S.C. § 401(l).

Aug. 2015 Letter.)  Defendant has stipulated that it is liable to Plaintiff under the Agreement. (Def. 56.1 ¶ 2.)  However, the parties dispute the actual amount owed to Plaintiff pursuant to the terms of the Agreement.  (*See e.g.*, Pl. Affidavit ¶ 16; Def. 56.1 ¶¶ 5, 6.)

## JURISDICTION

Plaintiff brings this action under the assumption that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, on the basis that Thalle's Deferred Compensation Plan qualifies as a "pension plan" under the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1001 *et seq*.

As an initial matter, Thalle's Deferred Compensation Plan appears to qualify as an ERISA "pension plan" under 29 U.S.C. § 1002(2)(A)), in that it is maintained by Thalle, for the purpose of providing deferred income to Thalle employees post-retirement.[4]  (Pl. Affidavit, Ex. 3 at 1 ("Thalle desires to … assist [the employee] in providing for contingences of retirement.").

Furthermore, to the extent that a reasonable person could ascertain from the plan the base level of intended benefits, to be provided by Thalle, after the triggering event of retirement, in accordance with a formula, and could deduce, at least, that the class of beneficiaries is some subset of employees, the Thalle Plan also comports with a basic tenet of ERISA law – that "[a] 'plan, fund, or program' … [falls under] ERISA … [where,] from the surrounding circumstances

---

[4] *See Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 95 F. Supp. 3d 402, 410 (S.D.N.Y. 2015) ("In determining whether the plan at issue provides retirement income, courts consider the express terms or surrounding circumstances of the plan.").  Although Plaintiff references the possibility of "buy-out" payments prior to retirement, (*see* Pl. Affidavit Ex. 7), the Court finds the Agreement sufficient to qualify as an ERISA plan to the extent that it was designed, by its express terms, to provide deferred income post-retirement.  *See Albers v. Guardian Life Ins. Co. of Am.*, No. 98 CIV.6244 DC, 1999 WL 228367, at *4 (S.D.N.Y. Apr. 19, 1999) (finding deferred compensation agreement was not ERISA plan where it was designed to provide payment of income during employment and payment post retirement was "merely incidental"); *see also Serio v. Wachovia Sec., LLC*, No. 06–CV–4681, 2007 WL 2462626, at *4 (D.N.J. Aug. 27, 2007) ("[C]ourts interpreting the [s]ection 1002(2)(A) definition of pension plan have determined that the critical factor in determining whether a deferred compensation plan is an ERISA pension plan is whether the plan allows payments to be made to employees during active employment.").

a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving the benefits." *Kuhbier*, 95 F. Supp. 3d at 409 (*quoting Grimo v. Blue Cross/Blue Shield of Vt.,* 34 F.3d 148, 151 (2d Cir.1994)).

Additionally, to the extent the "'touchstone' for determining if a plan is governed by ERISA is whether administering it necessitates 'an ongoing administrative scheme,'" *id.* (*quoting Castagna v. Luceno,* No. 09–CV–9332, 2011 WL 1584593, at *19 (S.D.N.Y. Apr. 26, 2011), *aff'd,* 744 F.3d 254 (2d Cir. 2014) and *aff'd,* 558 Fed.Appx. 19 (2d Cir. 2014), this Court finds the level of managerial discretion and individualized review to be exercised by Thalle sufficient to satisfy such a requirement. *See District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n. 2 (1992) (noting a plan exists only if an employer has "some minimal, ongoing 'administrative' scheme or practice").  For example, aside from the requirement that Thalle provide continuous, monthly installments over the course of 120 or 180 months, Paragraphs 3.3 and 3.5 of the Plan afford Thalle the discretion to evaluate and monitor the ongoing status of an employee's disability, for the purpose of benefit disbursement prior to normal retirement age.  Furthermore, Paragraph 11 permits Defendant to analyze individual compliance with the Agreement's non-compete provision.  *See Okun v. Montefiore Med. Ctr.*, 793 F.3d 277, 279 (2d Cir. 2015) (factors used to evaluate whether "administrative scheme" is sufficient to constitute ERISA plan include: "whether employer's undertaking … requires managerial discretion in its administration; whether a reasonable employee would perceive an ongoing commitment by the employer to provide … benefits;  and whether the employer was required to analyze circumstances of each employee's termination separately in light of certain criteria"); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 18 n. 10 (1987) (noting that "a commitment to pay … benefits to employees as each person [leaves] employment" can create

4

"the need for an administrative scheme to pay these benefits on an ongoing basis."); *Kuhbier*, 95 F. Supp. 3d 402, at 416-18 (non-compete provision requiring Defendants to engage in individualized analyses weighed against finding administrative scheme insufficient to constitute ERISA plan).

Additionally, the Plan represents the very kind that ERISA was designed to regulate, in that it vests Thalle with the "'responsibility to pay benefits on a regular basis,'" causing Thalle to "face[] ... periodic demands on its assets that require long-term coordination and control." *Okun*, 793 F.3d at 280 (quoting *Fort Halifax*, 482 U.S. at 12).  Moreover, because ERISA's protections are designed to "safeguard the financial integrity of employee benefit funds … and to ensure that employers' promises are kept," and Plaintiff brings this suit to recover unpaid benefits, this action appears to present one of the very circumstances contemplated under the Act.  *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 454 (1st Cir. 1995).

Finally, another court in this district has asserted subject-matter jurisdiction over litigation involving the same Deferred Compensation Plan, under 28 U.S.C. § 1331.  *See Pierorazio v. Thalle Const. Co.*, 13-CV-4500 (VB), 2014 WL 3887185, at *1 (S.D.N.Y. June 26, 2014) (recognizing federal jurisdiction where plaintiff sued Thalle Construction Company under ERISA for failure to pay benefits accrued under deferred compensation plan.)  Nor does Defendant contest that this plan comes within the ambit of ERISA, and there is no dispute as to this fact.

## APPLICABLE STANDARDS

### SUMMARY JUDGMENT

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The rule states in pertinent part:

5

> A party may move for summary judgment, identifying each claim or defense—
> or the part of each claim or defense—on which summary judgment is sought.
> The court shall grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to judgment
> as a matter of law.

Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of

any genuine dispute or issue of material fact by pointing to evidence in the record, "including

depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which

it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has fulfilled its preliminary burden,

the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.

Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A

genuine dispute of material fact exists when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Annuity, Pension, Welfare & Appretinceship Skill

Improvement & Safety Funds of Int'l Union of Operating Engineers v. Colonial Sur. Co.*, 11-CV-

00178 (NSR), 2014 WL 4493803, at *2 (S.D.N.Y. Sept. 11, 2014) (quoting *Anderson*, 477 U.S.

at 248; *accord Benn v. Kissane,* 510 F. App'x 34, 36 (2d Cir. 2013)).  Courts must "constru[e]

the evidence in the light most favorable to the non-moving party and draw[] all reasonable

inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d

Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  In reviewing

the record, "the judge's function is not himself to weigh the evidence and determine the truth of

the matter." *Anderson*, 477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry

of determining whether there is the need for a trial." *Id.* at 250.

<u>MOTION TO AMEND</u>

Generally, a party may amend a pleading once as a matter of course or at any time before

trial with leave of the court. Fed. R. Civ. P. 15(a)(1)-(2). If a party seeks leave to amend a

pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P.

15(a)(2). "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility

of amendment, and perhaps most important, the resulting prejudice to the opposing party." *State

Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981) (citing *Foman v. Davis,* 371

U.S. 178, 182, (1962). Leave to amend may properly be denied "on grounds of futility if the

proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of

fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A*., 626 F.3d 699, 725-726 (2d Cir.

2010) (quoting *State Teachers Ret. Bd*., 654 F.2d 843, 846) (2d Cir. 1981); *accord Ruotolo*, 514

F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182)).

## DISCUSSION

### I.    Benefits Owed Under Thalle Deferred Compensation Plan Agreement

Plaintiff moves for summary judgment on the basis that he is entitled to $289,900

pursuant to the terms of the Agreement. (*See* Memorandum of Law in Support of Plaintiff's

Motion to Amend His Complaint and for Summary Judgment, 5, ECF No. 35 [hereinafter "Pl.

Mem."]).) Defendant contends that Plaintiff is only entitled to $123,202. (*See* Affidavit of

Attorney Wynn in Opposition to Plaintiff's Motion for Summary Judgment, ¶¶ 5,6, ECF No. 33

[hereinafter "D. Counsel Affidavit"].)[5]

---

[5] Plaintiff contends that Attorney Wynn's affidavit is legally insufficient to oppose Plaintiff's motion because Wynn
never worked for Defendant, and is merely General Counsel for the company that purchased Defendant. (*See*
Plaintiff's Reply Memorandum in Further Support of Plaintiff's Motion to Amend his Complaint and for Summary
Judgment, 2, ECF No. 42 [hereinafter "Pl. Reply"].) The Court may credit legal arguments advanced in an
attorney's affidavit, *see Wm. Wrigley, Jr. Co. v. Waters*, 82-CV-4496 (CES), 1986 WL 1180454, at *1 (S.D.N.Y.
Aug. 14, 1986) (crediting legal arguments asserted in affidavit of defense counsel), but finds it unnecessary to do so
here. The Court need only look to the terms of the Agreement to resolve the contractual dispute at issue, and cites
Wynn's affidavit only to reference Defendant's purported interpretation of the contract. However, it would behoove
both parties to review the Federal Rules of Civil Procedure and the Local Rules to ensure that future submissions
comply.

The Agreement references, but does not provide the formula used to calculate Plaintiff's total benefit amount.  (*See* Agreement at 2.)  However, the parties appear to agree that this benefit is deduced by multiplying Plaintiff's average compensation over his final five years of employment by sixty percent (which accounts for social security payments to be received by Plaintiff), and multiplying that number by 10.  (*See* Pl. Mem. at 5; *see also* D. Counsel Affidavit ¶ 5.)  This formula results in a total benefit amount of $289,900, and there is no dispute of fact as to this number.  *Id.*

The parties only dispute whether or not Plaintiff's total benefit amount should be modified, per the Agreement, in order to account for Plaintiff's early departure from Thalle, prior to retirement.  Defendant contends that Plaintiff would only have been entitled to the full benefit amount of $280,900 if he had remained at Thalle until retirement, and that his benefit must be modified, pursuant to Exhibit B of the Agreement, in order to account for his leave pre-retirement.  (*See* D. Counsel Affidavit ¶¶  5, 9.)  Thus the question before the Court is whether it can determine the benefit amount owed to Plaintiff under the terms of the Agreement, as a matter of law, and what that amount is.

As a preliminary matter, the Court must determine whether the ERISA Agreement is ambiguous.  "Whether contract language is ambiguous is a question of law that is resolved by reference to the contract alone."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) (internal quotation marks and citations omitted); *see also Aramony v. United Way of Am.*, 254 F.3d 403, 412 (2d Cir. 2001) (when determining whether a contract is ambiguous "reference may not be had to matters external to the entire … agreement.") (internal quotation marks and citation omitted).  Language in a plan "'is ambiguous when it is capable of more than one meaning when

viewed objectively by a reasonably intelligent person who has examined the context of the entire

... agreement.'" *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004).

Generally, "unambiguous language in an ERISA plan must be interpreted and enforced in

accordance with its plain meaning." *Aramony v. United Way Replacement Benefit Plan*, 191

F.3d 140, 149 (2d Cir. 1999) (citing *Devlin v. Transportation Communications Int'l*, 173 F.3d

94, 103 (2d Cir.1999).  To the extent that an ERISA plan contains ambiguous terms, the Court

may consider extrinsic evidence to clarify the Agreement.  *Gibbs ex rel. Estate of Gibbs v.*

*CIGNA Corp.*, 440 F.3d 571, 579 (2d Cir.2006).  Furthermore, any ambiguities in the contract

must be construed in favor of the beneficiary.  *Fay v. Oxford Health Plan*, 287 F.3d at 104.

Nonetheless, whether determined to be ambiguous or clear, "the provisions of an ERISA plan

should be construed so as to render all provisions meaningful and to avoid illusory promises."

*Aramony v. United Way Replacement Benefit Plan*, 191 F.3d at 150 (internal quotation marks

and citations omitted).

Paragraph six of the Agreement covers employment terminations prior to retirement, for

reasons other than disability or death.[6]  According to this section, if an employee leaves, or is

terminated before he becomes entitled to deferred compensation, he shall be entitled to benefits

as defined in Agreement Exhibit B ("Exhibit B").  (*See* Agreement ¶ 6.)  Under Exhibit B, when

one's employment is terminated outside of death or disability, the employee is "entitled to a non-

forfeitable percentage of his final benefit indicated in Paragraph 1 [and] determined as follows:"

for 0-10 total years of service, the non-forfeitable percentage is 0 percent; for years 10-11 of

---

[6] Plaintiff does not contest that his termination is governed by Paragraph Six, and in turn, Exhibit B.  Plaintiff only offers an alternate interpretation of the terms of Exhibit B.  (*See e.g.*, Pl. Reply Affidavit ¶ 12, ECF No. 41, [hereinafter "Pl. Reply Affidavit"].)

service, employees are entitled to a non-forfeitable percentage of 25 percent; and, for each year thereafter, the percentage is 2.5.  (*See* Agreement Ex. B.)

The paragraph that follows reads: "[n]otwithstanding the provisions of the preceding paragraph, the Employee shall be entitled to a 100% non-forfeitable interest in his retirement benefit as indicated in Paragraph 1 when he attains his normal retirement date."  (*Id.*)  Plaintiff argues that this paragraph is "intended to supercede,"[7] and essentially nullify the preceding section, and entitles him to "100% of his benefit."  (Affidavit of Todd Heller, ¶ 5, ECF No. 38, [hereinafter "Heller Affidavit"].)  Thus, according to Plaintiff, his "100% non-forfeitable interest" is the full benefit amount, which the parties agree is $289,900.  (*Id.*)

The Court finds Plaintiff's reading inconsistent with the plain terms of the Agreement.[8] Plaintiff's interpretation, entitling him to the full benefit amount, renders void both the first paragraph and non-forfeitable percentage schedule of Exhibit B, and renders Paragraph Six of the Agreement unnecessary.  Such an interpretation directly contradicts prevailing law, which requires that ERISA plan provisions "be construed so as to render all provisions meaningful." *Aramony*, 191 F.3d at 150 (internal quotation marks and citations omitted).  Furthermore, Plaintiff's interpretation requires that the Court read this section to provide Plaintiff with "100%" of his retirement *benefit*, but this is simply not what the Agreement states, and nothing in the Agreement leads the Court to conclude that "100%" *of a retirement benefit* is equivalent "100%" *of a "non-forfeitable interest in* [a] retirement benefit."

---

[7] Plaintiff's contract interpretation argument is largely set forth in an affidavit submitted by an attorney who is not appearing in this matter, but purports to be an "expert in retirement plans," and Plaintiff Daniel Verdier's own Reply Affidavit.  The Court notes that Mr.Verdier is represented by counsel, and the undersigned cannot consider legal arguments made by him on his own behalf.  Neither of Plaintiff's memoranda make specific arguments with regard to Exhibit B, thus the Court references the arguments set forth in the affidavit submitted by Attorney Heller for the narrow purpose of acknowledging Plaintiff's interpretation of the plan terms.
[8] Though not the model of clarity, the Court finds the Agreement unambiguous, as the meaning of Exhibit B is ascertainable without need to resort to evidence outside of the four-corners of the Agreement.

Instead, viewing the contract as a whole, the Court finds that the "100% non-forfeitable interest in [Plaintiff's] retirement benefit," referenced in the second paragraph of Exhibit B, refers not to Plaintiff's full benefit amount, but to Plaintiff's claim to a benefit under the Agreement.  Thus, the Court finds that if a "reasonably intelligent person … examined the context of the entire ... agreement" they would find that Plaintiff's benefit amount is rightly modified, pursuant to the "non-forfeitable percentage" schedule, resulting in a total payment of $123,202.[9]  *See Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d at 256.

Other aspects of the Agreement support this conclusion.[10]  First, the term "interest" as it appears elsewhere in the Agreement, refers to a cognizable interest, or standing to assert a claim under the instrument in question.  For instance, Paragraph Eight of the Agreement provides that Thalle may procure insurance on the life of the employee, but indicates that the employee "shall have no *interest* whatsoever in any such policy."  In other words, the employee cannot assert any right to this policy.  As a point of comparison, because Plaintiff does have a non-forfeitable interest in his benefit under the Agreement, he is able to designate a beneficiary to receive benefit installments in the event of his death.[11]  (*See* Agreement at ¶¶ 4, 5.)  Finally, given the Agreement was designed to "reward and retain the services" of Thalle employees, it would make

[9] This number is derived from multiplying Plaintiff's full benefit amount of $289,900 by his non-forfeitable percentage.  Plaintiff's non-forfeitable percentage accounts for his seventeen years of employment with Thalle, and is calculated as follows – Plaintiff receives 25% for his first 10 years at Thalle, and an additional 2.5% for each additional year thereafter for a total non-forfeitable interest of 42.5%.  $289,900 multiplied by 42.5% results in a total of $123,202.  The parties agree that, to the extent the non-forfeitable schedule applies, this is the amount Plaintiff would be entitled to.  (*See* D. Counsel Affidavit. ¶ 6; Pl. Reply Affidavit ¶ 13.)
[10] The Court notes that prior to this action, Plaintiff also appeared to believe the non-forfeitable schedule applied to his benefit.  (*See* Pl. Affidavit, Ex. 7) (letter dated December 1, 1993, in which Plaintiff asked for the "dollar amount of his vested interest under the agreement" and the "non-forfeitable percentage of his benefit" upon which it was based); (letter on behalf of Plaintiff dated November 10, 1995 noting Plaintiff's "right to benefits arises under … paragraph '6' and Exhibit 'B,'" "calculate[ing] [his] non-forfeitable … benefit … by means of the formula set forth in Exhibit 'B'" and using the non-forfeitable benefit schedule to compute the benefit owed)
[11] *See also* 29 U.S.C. § 1002 ("The term "nonforfeitable" when used with respect to a pension benefit or right means *a claim* obtained by a participant or his beneficiary *to that part of* an immediate or deferred benefit under *a pension plan which arises from the participant's service*, which is unconditional, *and which is legally enforceable against the plan*.")

little sense for employees who left Thalle prior to retirement to receive the same benefit they would have received had they remained.[12]

### II.    Plaintiff's Motion to Amend to Seek Punitive Damages

Plaintiff brings this action pursuant to ERISA Section 1132.  As relevant to this motion, Section 1132 provides for the following remedies; recovery of benefits due, enforcement or clarification of rights under the agreement, an injunction, or "other appropriate equitable relief." 29 U.S.C. § 1132.  On numerous occasions, the Second Circuit has stated that "[c]lassic … punitive damages are never included within other appropriate equitable relief."  *Gerosa v. Savasta & Co*., 329 F.3d 317, 320-321 (2d Cir. 2003) (internal quotation marks and citations omitted); *see Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 108 (2d Cir.2008) (holding that "sole remedies" available to plan participants bringing actions under 29 U.S.C. § 1132(a)(1) are for "recovery of benefits due, or for enforcement of the terms of" retirement plan)*; see also Kim v. Columbia Univ*., 460 F. App'x 23, 26 (2d Cir. 2012) (noting restoration of Plaintiff's retirement account with interest was the only relief available under 29 U.S.C. § 1132(a)(1)).  Plaintiff fails to address this barrier to his claim in a meaningful manner.[13]

---

[12] This interpretation is further corroborated by the parties' prior arrangement, which provides Plaintiff with benefits for his previous stint at Thalle, prior to the inception of the Deferred Compensation Plan, and his subsequent employment, excluding the three years he was not at Thalle.  (*See* Pl. Affidavit. ¶ 3.)

[13] Plaintiff argues that, while punitive damages are not generally available under ERISA, they can be awarded in cases of fraud and extreme disloyalty.  (*See* Pl. Mem. at 3.)  Yet, the only case that Plaintiff cites in support of this contention concludes that punitive damages are *not* available under ERISA.  (*See id*. citing *Diduck v. Kaszycki & Sons Contractors, Inc*., 974 F.2d 270, 286 (2d Cir. 1992) ("The exception permitting recovery of punitive damages in cases of fraud or extreme disloyalty is just that—an exception—occasionally awarded in a few states … Our conclusion that punitive damages are not available under § 502(a)(2) is reinforced by the virtually unanimous interpretation of § 502(a)(3)'s similar language—'appropriate equitable relief'—as not allowing such recovery.") (internal quotation marks and citations omitted).

Because punitive damages are not recoverable under ERISA, such a claim would not be legally cognizable, and Plaintiff's leave to amend would be futile.  For this reason, Plaintiff's motion to amend is denied.

### III.     Plaintiff's Request for Attorney's Fees and Prejudgment Interest[14]

#### a.   Attorneys' Fees

Section 502(g) of ERISA provides that "the court in its discretion may allow reasonable attorney's fees and costs ... to either party."  29 U.S.C. § 1132(g)(1).  To qualify for an award of attorneys' fees, a party must have achieved "some degree of success on the merits."  *Donachie v. Liberty Life Assurance Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014) (quoting *Hardt v. Reliance Standard Life Ins. Co*., 560 U.S. 242, 254–55 (2010)).  "Whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion."  *Id*.  Although a court may, without further inquiry, award attorneys' fees to a plaintiff who has had "some degree of success … courts retain discretion to consider five additional factors" when determining whether such an award is appropriate.  *Id*. (internal quotation marks and citations omitted).  Known as the "*Chambless* factors," they are:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id*. (citations omitted).

Because Plaintiff has prevailed in asserting his right to benefits under the Agreement, and Defendant concedes that it became liable to Plaintiff for these benefits when he turned sixty-

---

[14] Defendant does not address Plaintiff's claims for attorneys' fees or prejudgment interest.

five,[15] the Court finds that an award of attorney's fees is appropriate.  The Court also notes that

the *Chambless* factors weigh in favor of a grant of attorney's fees.  First, Defendant's stipulation

to liability under the Agreement, and its willingness to pay Plaintiff a lump sum to account for

the payments that should have been made when Plaintiff turned sixty-five, demonstrate

culpability under the first factor.  *See Slupinski v. First Unum Life Ins. Co*., 554 F.3d 38, 48 (2d

Cir. 2009) ("[C]onduct that is blameable; censurable; ... at fault" or "involving the breach of a

legal duty or the commission of a fault" is sufficient for culpability) (internal quotation marks

and citations omitted).  As to the second factor, because the Court does not have sufficient

information to determine Defendant's ability to satisfy such an award, this factor is not

probative.[16]  The third factor weighs in Plaintiff's favor since a fee award would encourage

employers owing ERISA benefits to honor their agreements with employees and to make

payments in a timely fashion.  Turning to the fourth factor, Plaintiff's action did not specifically

seek to benefit all participants and beneficiaries, nor to resolve a significant legal question

regarding ERISA, and this factor does not weigh heavily in favor of a grant of attorneys' fees.

Finally, considering the fifth factor, the Court finds that the Agreement entitled Plaintiff to

recover some benefits (though not in the amount sought by Plaintiff), and this factor also weighs

in favor of awarding Plaintiff attorneys' fees.

For these reasons, the Court finds that Plaintiff is entitled to recover reasonable attorneys'

fees.  This matter is respectfully referred to Magistrate Judge Lisa M. Smith for a determination

regarding the appropriate amount of such fees.

---

[15] (*See e.g.*, Def.'s Aug. 2015 Letter) (indicating an intent to pay Plaintiff a lump sum of $29,196.60, to account for payments accrued since August 1, 2013, the day after Plaintiff had reached age sixty-five.)
[16] This factor has been ascribed less bearing on the *Chambless* analysis than its analogues.  *See Severstal Wheeling, Inc. v. WPN Corp.*, No. 10-CIV-954 (LTS) (GWG), 2016 WL 1611501, at *2 (S.D.N.Y. Apr. 21, 2016) (noting factor two "is weighed less heavily").

b.  Prejudgment Interest

Plaintiff seeks prejudgment interest on the total benefit amount at the statutory rate of interest of nine percent.  (*See* Pl. Mem., at 5-6.)

Whether a prevailing party in "a suit to enforce a right under ERISA" is entitled to prejudgment interest is "ordinarily left to the discretion of the district court."  *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000); *see Slupinski*, 554 F.3d at 53–54.  In exercising such discretion, courts consider the following factors: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  *Id.* at 55; *Jones*, 223 F.3d at 139 (internal quotation marks and citations omitted).  Although the decision to grant prejudgment interest ultimately lies with the Court, such an award should be granted to "make the [plaintiff] whole," "not to give them a windfall."  *Algie v. RCA Glob. Commc'ns, Inc*., 891 F. Supp. 875, 899 (S.D.N.Y. 1994), *aff'd*, 60 F.3d 956 (2d Cir. 1995); *see City of Milwaukee v. Cement Division, National Gypsum Co.,* 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss").

As to the first factor, Plaintiff had a reasonable expectation that he would begin receiving retirement benefits from Thalle beginning in August 2013, and had to bring the instant action in order to vindicate his rights under the Agreement.  Plaintiff attempted to contact Defendant on at least four occasions, both before and after he reached retirement age, in order to inquire as to his benefits, and Defendant never provided a response.  (*See* Pl. Affidavit ¶¶ 11, 12; *id*., Ex. 7; *see also* Pl. Reply Affidavit, Ex. 24, 21:11-14.)  Given these circumstances, and relevant caselaw,

15

the Court finds that the first factor weighs in favor of a prejudgment interest award.  *See Slupinski*, 554 F.3d at 54 (quoting *Kansas v. Colorado*, 533 U.S. 1, 10 (2001)) ("a monetary award does not fully compensate Plaintiff unless it includes an interest component."); *Jones*, 223 F.3d at 139 ("prejudgment interest is an element of the plaintiff's complete compensation"). Second, Defendant has conceded that Plaintiff's payments were "due and owing" as of August 1, 2013, effectively admitting a breach under the Agreement.  Furthermore, between August 2013 and September 2015, Defendant enjoyed access to, and deprived Plaintiff of, funds to which he was entitled.  (*See* Def. August 2015 Letter); *see also Slupinski*, 554 F.3d at 54 ("an award of prejudgment interest may be needed in order to ensure that the defendant not enjoy a windfall as a result of its wrongdoing").  Thus, as to the second factor, fairness and equity warrant an award of prejudgment interest.  Third, "[i]n light of ERISA's purpose of protecting employees' rights to receive the benefits they are due, … [the] third factor[], i.e., the remedial purpose of ERISA," also favors Plaintiff.  *Slupinski*, 554 F.3d at 55.

However, the record reflects that Defendant paid Plaintiff a monthly interest fee of nine percent for all late payments due through September 2015, and began to make regular payments from that point forward.  (*See* Def.'s Aug. 2015 Letter; Pl. Affidavit, Ex. 13.)  In light of this, the Court finds that Plaintiff's award for prejudgment interest should be reduced to account for the interest already paid.  The Court refers this matter to Magistrate Judge Lisa M. Smith for a determination as to the appropriate interest rate and timeframe for the award of prejudgment interest.[17]

---

[17] *See Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 535 (S.D.N.Y. 2011) (calculating prejudgment interest, noting courts "routinely calculate prejudgment interest from a midpoint date in the delinquency period," and identifying that period as the date benefits become due, through the date Plaintiff receives payment of retroactive benefits).

## CONCLUSION

For the foregoing reasons, Verdier's motion to amend and for summary judgment is GRANTED in part and DENIED in part. The Court finds that Plaintiff is only entitled to benefits in the amount of $123,202 under the terms of the Agreement, and grants partial summary judgment in favor of the Defendant on this point. The Court denies Plaintiff's motion to amend, and grants Plaintiff's request for attorney's fees and prejudgment interest. This matter is hereby referred to Magistrate Judge Lisa M. Smith for an inquest regarding attorneys' fees and a determination regarding an appropriate award of prejudgment interest. The Court respectfully directs the Clerk to terminate the motion at ECF No. 34.

Dated:    January __5th__, 2017            SO ORDERED:
          White Plains, New York

                                           _____
                                           NELSON S. ROMÁN
                                           United States District Judge

17